**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DARREN HARTMAN                          CIVIL ACTION

VERSUS                                  NO. 12-1929

THE CITY OF NEW ORLEANS, ET AL.         SECTION "B"(5)


**ORDER AND REASONS**


Nature of Motion and Relief Sought:

　　Before the Court are the City of New Orleans's and Ronal
Serpas's ("Defendants") joint Motion to Dismiss and in the
alternative Motion for Summary Judgement, Plaintiff Darren
Hartman's ("Hartman") Opposition, and Defendants' Reply. (Rec.
Docs. No. 13, 21 & 25).

　　Because the facts as alleged do not entitle Hartman to the
relief he seeks, Hartman's complaint fails to state a claim under
42 U.S.C. § 1983. Accordingly,

　　**IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED**
and the case is **DISMISSED without prejudice.**

Procedural History and Facts of the Case:

　　Hartman brings this action against the New Orleans Police
Department ("NOPD") and Chief of Police Ronal Serpas ("Serpas" or
"Chief Serpas") under 42 U.S.C. § 1983, seeking compensatory
damages for alleged violations of his constitutional rights.

Hartman works for the NOPD Traffic division. (Rec. Doc. No. 1 at 7). He alleges that Chief Serpas instituted a policy requiring all field officers to fill out a "Field Interview Card" ("FIC") whenever they encountered individuals in the course of employment, regardless of the purpose or justification for the stop. *Id*. 7-8. Hartman describes FIC's as form index cards on which field officers record information regarding citizens with whom officers come into contact, which is later uploaded into a "suspicious person database." *Id*. Hartman found that policy of questionable constitutionality and opposed it for that reason. In the terms of his Complaint, Hartman felt the policy resulted in a "dragnet over all individuals having contact with the NOPD--victims, informants, citizens . . . and the like--to be entered into a 'suspicious persons' database." *Id*. at 4. He expressed his concerns to his superiors on an unspecified date. Unpersuaded, Hartman's superiors instructed him to continue. Hartman complied, but began writing "ordered to do so by rank" in the FIC field for the "reason for the stop." *Id*. at 8. Hartman alleges that because of those isolated actions--orally questioning FIC policy and the manner in which he filled out FICs--an un-named superior retaliated against him and cited him pretextually for his failure "to follow instructions related to an accident investigation" on April 26, 2012. *Id*. He alleges that general "NOPD retaliation" continued, as his superiors wrote him

up "on multiple occasions for actions and/or omissions he did not commit...conducting an unprecedented and extensive review of all [Hartman's] reports...making picayune criticisms of said reports...demeaning and maligning Officer Hartman to various members of the NOPD, the public and the press...[and subjecting] Hartman to demeaning comments and other unwarranted criticism during performance of his duties." *Id.* at 8-9.

On these grounds Hartman brings claims against the City and Serpas in both his individual and official capacities under 42 U.S.C. § 1983. While his complaint delineates five distinct "counts" against those parties, his 1983 claims are premised on violations of what he asserts are his: (i) "absolute right to speak out against the policy and practice of the NOPD to obtained FICs from non-suspicious persons who came into contact with the NOPD," (ii) "clear and absolute right to maintain his status as an NOPD officer in good standing," (iii) "right to his reputation and good name and to be free from unwarranted and untrue attacks on that reputation," and (iv) procedural Due Process rights. *Id.* at 10 & 14.[1]

---

[1] Hartman also sets forth in "Count Three" of his Complaint what he styles a "Retaliation Action Against the City and Chief Serpas." *Id.* at 12. To the extent such a claim may be cognizable, the Court understands this claim to be premised on the same rights outlined above. Hartman's complaint is iterative and subject to several interpretations, but each of them are premised on the same putative rights. As his opposition memorandum makes clear, he asserts only "the following claims--claims for violation of 42 U.S.C. 1983 for violation of his rights to oppose the unconstitutional FIC policy; a claim under Monell against the City; deprivation of procedural due process, intentional infliction of emotional distress and libel." (sic)(Rec. Doc. 21 at 2).

Separately, Hartman alleges that Cheif Serpas intentionally misrepresented and concealed the nature of his April 26 citation when stating to the New Orleans Times-Picayune (presumably in response to a reporter's questioning) that Hartman was merely "disciplined for refusing to write tickets on clear and obvious violations regarding traffic violations, not for refusing to fill out FICs." *Id*. at 10. On those and related grounds Hartman asserts claims for Libel and Intentional Infliction of Emotional Distress against both Defendants. Id. at 14-16.

The City and Serpas now move jointly for dismissal of each claim and, in the alternative, for summary judgment. They contend *inter alia* that Hartman fails to state a claim against either Defendant. (Rec. Doc. 13).

<u>Law & Analysis</u>

**A.   <u>Motion to Dismiss Standard</u>**

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th

4

Cir. 2009)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions "must be supported by factual allegations." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do no suffice." *Id*. at 1949.

Upon identifying the well-pleaded factual allegations, courts then "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

B.  **Claims Under 42 U.S.C. § 1983**

42 U.S.C. § 1983 states that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"The first inquiry in any 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir. 1988)(citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Only federal rights give rise to 1983 suits; claims arising out of tort law must be remedied in state court under traditional tort-law principles. *Baker*, 443 U.S. at 146.

Here, Hartman has failed to allege facts supporting his claims of constitutional violations. Specifically, his complaint alleges violations of an "absolute right to speak out against [NOPD] policy," an "absolute right to maintain his status as an NOPD officer in good standing," a right to his "reputation and good name", and his procedural Due Process rights. *Id.* at 10 & 14. As explained below, either these rights do not exist or facts constituting their violation have not been pled.

As for the "absolute right" to speak out against NOPD policy Hartman claims to have, The Supreme Court's opinion in *Garcetti v. Ceballos*, 547 U.S. 410, 126 689 (2006), and Fifth Circuit progeny make clear that no such absolute right exists. As the

6

Fifth Circuit explained in addressing similar claims for retaliatory deprivation of a public employee's First Amendment rights:

> This right is not absolute, though, and we utilize a four-pronged test to determine whether the speech of a public employee is entitled to constitutional protection. *See Juarez v. Aguilar,* 666 F.3d 325, 332 (5th Cir.2011). A plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct. *Id.* (citations omitted). In 2006, the Supreme Court added what we have characterized as a "threshold layer" to the second prong of the retaliation test. *See Davis v. McKinney,* 518 F.3d 304, 312 (5th Cir.2008) (describing *Garcetti v. Ceballos,* 547 U.S. 410 (2006)). Under this prong, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. While the court must consider factual circumstances to determine whether speech is official, the determination is still a question of law. *Charles v. Grief,* 522 F.3d 508, 513 n. 17 (5th Cir.2008). Functionally, this threshold layer has transformed our test, inserting an additional prong at which we consider whether the speech was pursuant

7

to the employee's duties or as a citizen.

*Gibson v. Kilpatrick*, 734 F.3d 395, 400 (5th Cir. 2013). *Garcetti* thus shifted the analytical focus "from the content of speech to the role the speaker occupied when he said it." *Davis v. McKinney,* 518 F.3d 304, 312 (5th Cir.2008). In other words, the threshold question is whether a public employee spoke pursuant to official duties and the subject matter of the speech in question is only considered to the extent it helps resolve that issue. *Id.* ("*Garcetti* . . . holds that before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job.")(citing *Mills v. City of Evansville*,452 F.3d 646, 647 (7th Cir. 2006)(quotations omitted).

"[W]hen a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).(citing *Spiegla v. Hull*, 481 F.3d 961, at 966 (7th Cir. 2007); *Battle v. Bd. of Regents*, 468 F.3d 755, 761 (11th Cir. 2006); *Foraker v. Chaffinch*, 501 F.3d 231 (3d. Cir. 2007)). "If however a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not

made as an employee, but as a citizen." *Id.* (citing *Freitag v. Ayers*, 468 F.3d 528 (9th Cir.2006)).

Here, that Hartman's speech was official speech made pursuant to his duties is evident from the face of his Complaint. The Complaint mentions only two acts of speech: raising concerns with "his superiors" and writing "ordered to do so by rank" on the "reason for stop" field on the FICs. (Rec. Doc. 1 at 7-8). The former is a plainly a "complaint[] or concern [made] up the chain of command at his workplace about his job duties." The latter is as well, if not actual performance of such a duty.

Hartman also alleges that the Defendants violated his "absolute right to maintain his status as an NOPD officer in good standing," for which he cites *Perry v. Sindermand*, 408 U.S. 593 (1972). *Id.* at 10. That case provides for no such right. In *Perry*, the Supreme Court considered First Amendment claims by a junior professor against the Texas Board of Regents. 408 U.S. at 594-96. The professor, who lacked tenure and had no employment contract, alleged that he was fired for his public opposition to University policies, which included testifying at congressional hearings. *Id.* The district court granted summary judgment against the professor on the grounds that he had no protectable interest in the absence of tenure or contract. *Id.* at 596. The Supreme Court reversed, holding (i) that lack of tenure or contractual rights to employment did not defeat the plaintiff's claim and

(ii) that the plaintiff's allegations raised "a genuine issue as to his interest in continued employment." *Id.* at 599. No where is a federal right to good standing as an employee created, let alone mentioned. Moreover, Hartman has not alleged that he has been terminated, fired, or otherwise suffered adverse employment actions similar to those at issue in *Perry*.

As to Hartman's claims that the Defendants deprived him of his "right to his reputation and good name and to be free from unwarranted and untrue attacks on that reputation," (Rec. Doc. 1 at 10), the Court finds this claim inseparable from his state-based libel claims. Because claims under 42 U.S.C. § 1983 must allege deprivation of federal and not state rights, *see*, *e.g.*, *Baker v. McCollan*, 443 U.S. 137 (1979), *supra*, these allegations entitle him to no relief under that statute.

Finally, Hartman claims that the Defendants violated his procedural due process rights. (Rec. Doc. 1 at 14). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334(1976)(citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)). However, "[b]efore the requirements of procedural due process apply there must be a deprivation of interest encompassed by the Fourteenth Amendment's protection of liberty and property." *Shaw v. Hosp. Auth. of Cobb Cnty.*, 507 F.2d 625, 628 (5th Cir. 1975)

Hartman alleges that the Defendants deprived him of (i) "a

10

protected property interest in his future employment," (ii) a property interest in "maintenance of his status in good standing with the NOPD absent actual misconduct," and (iii) "a property interest in maintaining the reputation and good name he had acquired as a seventeen year veteran with the NOPD." (Rec. Doc. 1 at 14). Assuming such rights are protected under the Due Process Clause, Hartman has made only conclusory statements as to their deprivation. His complaints alleges no demotion, no transfer, nor any other sanctioning as a result of the April 26, 2012 citation for failure to obey instructions. Rather, he alleges that his superiors subjected him to excessive reviews, "picayune criticisms," "unwarranted criticisms," and slanderous statements. Such allegations do not substantiate procedural due process claims. Hartman therefore failed to state a claim for violations of his procedural due process rights.

As to Hartman's remaining state law claims, the Court declines to exercise jurisdiction. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); *see also Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir.1999) ("When a court  dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.")

Conclusion

    Hartman has failed to state a claim under section 1983 against either Defendant. The facts alleged in his Complaint do not constitute violations of rights redressable under section 1983.

    **IT IS THEREFORE ORDERED** that Defendants' motion is **GRANTED** and the case is **DISMISSED without prejudice.**


    New Orleans, Louisiana, this 16th day of January, 2014.


                                                          UNITED STATES DISTRICT JUDGE